## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Thomas Wagner,<br><br>               Plaintiff,<br><br>v.<br><br>Jodi Harpstead, in her official capacity[1];<br>Marshall E. Smith, in his official<br>capacity; and Nancy Johnston, in her<br>official capacity;<br><br>               Defendants. | Civil No. 18-cv-3429 (MJD/HB)<br><br>**REPORT AND**<br>**RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

      This matter is before the Court on Defendants' Motion to Dismiss [Doc. No. 33]. For the reasons set forth below, the Court recommends that the motion be granted as to Plaintiff's equal protection claim and denied as to Plaintiff's First Amendment claim.

**I.    Background**

      Pursuant to 42 U.S.C. § 1983, Plaintiff Thomas Wagner is suing Defendants Jodi Harpstead, Marshall E. Smith, and Nancy Johnston, all in their official capacities, for allegedly (1) violating his right to free speech under the First Amendment by eliminating his access to public libraries by discontinuing the Mail-a-Book library program and (2) violating his right to equal protection by restricting his access the Mail-a-Book library

---

[1] Jodi Harpstead, Commissioner of the Minnesota Department of Human Services, is automatically substituted for Tony Lourey, former Commissioner of the Minnesota Department of Human Services, pursuant to Fed. R. Civ. P. 25(d).

program.  The operative complaint is the Amended Complaint filed on May 29, 2019 [Doc. No. 28].

Plaintiff is civilly committed to the Minnesota Sex Offender Program ("MSOP") and resides in a facility located in Moose Lake, Minnesota.  (Am. Compl. ¶ 7.) Harpstead is the Commissioner of the State of Minnesota's Department of Human Services ("DHS"), which operates MSOP.  (*See id.* ¶ 9.)  Smith is DHS's Health Systems Chief Executive Officer in Direct Care and Treatment.  (*See id.* ¶ 10.)  Johnston is the Executive Director of MSOP.  (*See id.* ¶ 11.)

For many years, MSOP clients were able to obtain public library materials through the Mail-a-Book program offered by the Arrowhead Library System.  (*Id.* ¶¶ 50–51.) The Mail-a-Book program is offered at no charge to individuals who are not able to visit a public library in person.  (*Id.* ¶ 51.)  The Arrowhead Library System provided a printed catalog of media such as books, movies, and audiobooks to MSOP, and MSOP screened the catalog and removed materials that could be detrimental to patients' therapy.  (*Id.* ¶¶ 54–55.)  MSOP clients submitted their requests directly to the Arrowhead Library System, which then procured the requested media from its own collections or through interlibrary loans made to other public libraries in Minnesota.  (*Id.* ¶¶ 57–59.)  The Arrowhead Library System then mailed the requested materials to MSOP clients.  (*Id.* ¶ 60.)  Books were typically bound; movies were mailed in plastic cases; and audio books were mailed in sleeves or two-ring binders.  (*Id.* ¶ 62.)  MSOP staff screened all incoming media.  (*Id.* ¶ 63.)  Plaintiff alleges the screening was not burdensome and the program did not represent a security risk.  (*Id.* ¶¶ 64–66.)  Items were returned through

the mail.  (*Id.* ¶ 70.)  Plaintiff used the Mail-a-Book program every month for more than five years.  (*Id.* ¶ 77.)

On November 6, 2018, Defendants proposed a new media policy that eliminated access to the Mail-a-Book program.  (*Id.* ¶¶ 80–81, 87.)  In response to Plaintiff's letter expressing concern about the new policy, Johnston provided the following two explanations: (1) "MSOP does not permit clients to order/purchase used books or movies and all items coming in from [Mail-a-Book] are used," and (2) "the books on tape often would come in with metal binders and or fasteners that are not allowed in the facility."  (*Id.* ¶ 85.)  Plaintiff believes the new policy was implemented in part to punish MSOP patients for filing lawsuits challenging MSOP's policies, including *Karsjens v. Piper*, Case No. 11-3659 (DWF/TNL).  (*Id.* ¶¶ 15, 22.)  The new policy became effective on December 4, 2018.  (*Id.* ¶ 87.)

Count One of the Amended Complaint asserts a claim for deprivation of the First Amendment right to free speech, specifically, the right to receive and read speech from public libraries.  (*Id.* ¶¶ 120, 126.)  Count Two asserts a claim for violation of equal protection.  Plaintiff contends he is similarly situated to members of the public, prisoners, and other civilly-committed individuals.  (*Id.* ¶¶ 106, 112.)

Defendants argue that the elimination of the Mail-a-Book program was directly related to an MSOP policy that prohibits clients from introducing used books, movies, and other media into the facility, which is a common restriction in high-security facilities.  (Defs.' Mem. Supp. Renewed Mot. Dismiss at 1 [Doc. No. 35].)  Defendants submit that the revised policy does not impermissibly restrict free speech and that Plaintiff was not

treated less favorably than similarly-situated individuals.  (*Id.* at 1–2.)

## II.     Legal Standards Applicable to Rule 12(b)(6) Motion to Dismiss

On a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader."  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Generally, a court may not consider matters outside the pleadings in assessing the sufficiency of a complaint under the Rule 12(b)(6) standard.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).  A court may make exceptions to this rule for matters of public record, materials "necessarily embraced by" the complaint, and exhibits submitted with the complaint.  *Id.* (citations omitted).

## III.    Discussion

### A.     First Amendment Claim

The parties disagree about the legal standard that should be used to assess Plaintiff's First Amendment claim.  According to Defendants, the relevant test is a modified version of a four-part test outlined in *Turner v. Safley*, 482 U.S. 78 (1987):

(1) whether there is a valid, rational connection between the [policy] and

4

> the legitimate [therapeutic or institutional] interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to [civilly committed clients]; (3) the impact accommodation of the asserted constitutional right will have on [staff] and other [clients], and on the allocation of [institutional] resources generally; (4) and whether there exist alternatives to accommodate the [client] with a de minimis cost.

*See Banks v. Jesson*, No. 11-cv-1706 (SRN/LIB), 2017 WL 1901408, at *7 (D. Minn. May 8, 2017) (quoting *Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015)).  The alterations in the *Turner* standard, noted above, reflect modifications courts in the District of Minnesota employ when assessing the constitutionality of restrictions placed on prisoners' First Amendment rights.  *E.g., Banks*, 2017 WL 1901408, at *7; *Ivey v. Mooney*, No. 05-cv-2666 (JRT/FLN), 2008 WL 4527792, at *4 (D. Minn. Sept. 30, 2008).  Courts in this District have "consistently used the modified *Turner* analysis in cases brought by MSOP residents."  *Ivey v. Johnston*, No. 18-cv-1429 (PAM/DTS), 2019 WL 3334346, at *5 (D. Minn. July 24, 2019), *R. & R. adopted*, 2019 WL 3987583 (D. Minn. Aug. 23, 2019).

Plaintiff disagrees that the modified-*Turner* standard is the applicable test. Plaintiff submits that a public library, unlike publishers and other private sources of media, is a designated public forum.  *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1128 (10th Cir. 2012).  Thus, Plaintiff argues, MSOP's policy eliminating access to public library materials must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication."  (Pl.'s Mem. Opp'n Mot. Dismiss at 19 (quoting *Perry*, 460 U.S. at 45) (emphases omitted).)

The Court disagrees with Plaintiff. Neither *Perry* nor *Doe* was decided in the context of prison administration or the administration of a civil commitment facility. The issue in *Perry* was whether the First Amendment was violated when a union elected by teachers as their exclusive bargaining representative was given access to the teachers' mailboxes and an interschool mail system that was denied to a rival union. 460 U.S. at 44. The issue in *Doe* was whether an ordinance that prohibited registered sex offenders from entering public libraries violated the First Amendment. Plaintiff cites no authority extending *Perry* or *Doe* to the civil commitment context.

Moreover, a First Amendment claim that would ordinarily "receive strict scrutiny analysis if raised by a member of the general population [is] evaluated under a lesser standard of scrutiny in the context of a prison setting." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). Though Plaintiff is not in prison, he is not a member of the general population, and the *Turner* test has been modified to account for the unique status of MSOP clients. The Eighth Circuit has indicated that individuals who are civilly committed as dangerous persons have limited constitutional rights. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). Though they are accorded "more considerate treatment and conditions of confinement" than prisoners, their "liberty interests are considerably less than those held by members of free society." *Id.* (cleaned up).

The Court is persuaded that the modified-*Turner* standard should apply to Plaintiff's First Amendment claim; however, an application of that test would be premature at this stage of the case. A significant procedural distinction exists between

this case and much of Defendants' authority: this case is before the Court on a motion to dismiss, whereas most of Defendants' cases were decided on motions for summary judgment. *See Holloway v. Magness*, 666 F.3d 1076, 1078 (8th Cir. 2012); *Senty-Haugen v. Goodno*, 462 F.3d 876, 880 (8th Cir. 2006) *Banks*, 2017 WL 1901408, at *1; *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004); *Ward v. Washtenaw Cty. Sheriff's Dep't*, 881 F.2d 325, 329 (6th Cir. 1989); *Hurd v. Williams*, 755 F.2d 306, 307 (3d Cir. 1985); *Minton v. Childers*, 113 F. Supp. 3d 796, 799 (D. Md. 2015); *accord Ivey v. Mooney*, 2008 WL 4527792, at *1. Courts in this District have recognized that, on a motion to dismiss, there is no record on which to conduct a modified-*Turner* analysis. *Stone v. Jesson*, No. 11-cv-0951 (WMW/HB), 2017 WL 1050393, at *4 (D. Minn. Mar. 17, 2017); *Ivey v. Johnston*, 2019 WL 3987583. A determination under *Turner* of whether First Amendment rights were violated in the civil commitment context "is a fact-intensive universe." *Ivey v. Johnston*, 2019 WL 3334346, at *6 (quoting *Holloway v. Magness*, 666 F.3d 1076, 1079 (8th Cir. 2012)). For example, an MSOP client's "therapy needs may be highly relevant to determining whether a policy reasonably relates to a legitimate interest." *Id.* Consequently, "courts considering a motion to dismiss an involuntarily committed individual's constitutional claim under Rule 12(b)(6) limit their inquiry to whether the Complaint states a cognizable constitutional claim and leave the *Turner* question to be determined upon a properly developed factual record." *Id.* (citing *Stone*, 2017 WL 1050393, at *4; *Pittman v. Jesson*, Civ. No. 12-1410 (SRN/TNL), 2014 WL 4954286, at *16 (D. Minn. Sept. 30, 2014)).

  The Court therefore considers whether the amended complaint states a cognizable

First Amendment claim. "To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right." *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011). The right to free speech "includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read," and "freedom of inquiry and freedom of thought." *Karsjens v. Jesson*, 6 F. Supp. 3d 916, 938–39 (D. Minn. 2014) (quoting *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965)) (cleaned up). The right to receive information "includes the right to some level of access to a public library, the quintessential locus of the receipt of information." *Kreimer v. Bur. of Police for Town of Morristown*, 958 F.2d 1242, 1255, 60 USLW 2607, 1992 WL 52609 (3d Cir. 1992).

Plaintiff alleges here that Defendants acted under color of state law when they eliminated his access to public libraries by discontinuing the Mail-a-Book program. (Am. Compl. ¶ 126.) Plaintiff further alleges that the elimination of the program restricted his right to free speech, specifically, the right to read, freedom of inquiry, and freedom of thought. (*Id.* ¶¶ 120, 126.) Plaintiff no longer has access to books, movies, and audiobooks from 27 public libraries in Minnesota. (*Id.* ¶¶ 50, 52.) He frequently checked out books and movies through the Mail-a-Book program. (*Id.* ¶ 72.) He has no other means to access public libraries, and the library at the Moose Lake MSOP facility is "woefully inadequate." (*Id.* ¶ 130.)

Defendants have cited two cases that were decided at an early procedural stage—one on a motion to dismiss, and one on a motion to amend—in which the courts

8

determined that a "publishers only" institutional policy was reasonably related to a government interest in preventing contraband from being smuggled into the facility. In *Kaufman v. Frank*, the court denied a prisoner leave to amend his complaint to add a free speech claim upon finding there could "be 'no question' that prison officials have a legitimate security reason for prohibiting used books" sent by a prisoner outreach program and prison book program. No. 06-C-205-C, 2006 WL 1982692, at *26 (W.D. Wis. July 13, 2006), *opinion amended on reconsideration sub nom.*, *Kaufman v. Karlen*, 2006 WL 2572062 (W.D. Wis. Sept. 1, 2006). *Kaufman* is distinguishable from the instant case on several grounds, however: the plaintiff in *Kaufman* was a prisoner, not a civilly committed individual; the *Kaufman* court found it "difficult" to understand plaintiff's allegations and noted that the plaintiff had not specifically challenged the prison policy at issue; it is not known whether the books to which the plaintiff in *Kaufman* sought access were from a public library or another non-publisher source; and *Kaufman* was not decided by a court in this District or Circuit and thus has no precedential value. Defendant's second procedurally similar case, *Lockhart v. Prasse*, 250 F. Supp. 529, 531 & n.5 (E.D. Pa. 1965), is distinguishable for similar reasons, in addition to being decided before *Turner*. The Court therefore declines to recommend dismissal of Plaintiff's First Amendment claim based on *Kaufman* or *Lockhart*.

In conclusion, the Court finds that Plaintiff has alleged a plausible First Amendment claim and recommends that Defendants' motion to dismiss that claim be denied.

### B.     Equal Protection Claim

Plaintiff alleges that Defendants' elimination of the Mail-a-Book program violates his right to equal protection.  (Am. Compl. ¶¶ 135–43.)  He contends that members of the general public, clients at similar treatment facilities, and members of general prison populations are not subject to such restrictions.  (*Id.* ¶ 140.)

"The Equal Protection Clause generally requires the government to treat similarly situated people alike."  *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  A plaintiff must show he was treated differently than similarly-situated individuals and that the treatment was because of "either a suspect classification or a fundamental right." *Id.*; *Patel v. U.S. Bur. of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (cleaned up).

The Court finds that Plaintiff has not alleged a plausible equal protection claim because he is not similarly situated to the general public, clients at other treatment facilities, or prisoners.  First, MSOP clients are not similarly situated to members of the general public.  *Serna v. Goodno*, No. 04-cv-615 (JMR/SRN), 2005 WL 1324090, at *6 (D. Minn. June 3, 2005), *R. & R. adopted*, 2005 WL 1705623 (D. Minn. July 7, 2005), *aff'd*, 567 F.3d 944, 2009 WL 1531955 (8th Cir. 2009).  Second, prisoners at one facility are not similarly situated to prisoners at other facilities.  *Klinger*, 31 F.3d at 732.  Third, MSOP clients at one facility are not similarly situated to civilly committed individuals at other facilities.  *Beaulieu v. Ludeman*, No. 07-cv-1535 (JMR/JSM), 2008 WL 2498241, at *13 (D. Minn. June 18, 2008).  Consequently, the Court recommends that Plaintiff's equal protection claim be dismissed.

Accordingly, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss [Doc. No. 33] be **GRANTED** as to Plaintiff's equal protection claim and **DENIED** as to Plaintiff's First Amendment claim.

Dated:  November 12, 2019           s/ *Hildy Bowbeer*
                                                         HILDY BOWBEER
                                                         United States Magistrate Judge

**NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).